UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ALANA R. LAFOLLETTE,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        No.:   3:11-CV-15
                                   )               (VARLAN/GUYTON)
CITY OF GATLINBURG,                )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION

This civil action is before the Court on Defendant City of Gatlinburg's Motion for

Summary Judgment [Doc. 15]. Plaintiff filed a response in opposition [Doc. 17], and

defendant replied [Doc. 19]. The Court has carefully considered the matter and for the

reasons stated herein, the Court will grant defendant's motion.

## I.    Background

Plaintiff Alana R. LaFollette ("plaintiff") was hired by defendant the City of

Gatlinburg ("defendant" or the "City") in July 2003 to work as a welcome center hostess for

the City in the in the welcome center located at the Ripley's Aquarium plaza in Gatlinburg,

Tennessee (the "Aquarium Welcome Center"), and did so until she separated from

employment with the City on July 2, 2009 [Doc. 1 ¶ 7; Docs. 15-1, 15-2]. Plaintiff was hired

by David Perella ("Mr. Perella"), the Director of Tourism for the City [Doc. 17-1 at 18]. Her

job responsibilities included greeting tourists, arranging brochures, photocopying, selling

tickets for festivals, and general care of the Aquarium Welcome Center [Doc. 15-11 at 26–27; Doc. 17-1 at 27].

In 2004, Walter Yeldell ("Mr. Yeldell") was hired by defendant as the Public Relations manager [Doc. 18]. Plaintiff was assigned as Mr. Yeldell's administrative assistant [Doc. 17-2 at 24]. Later, Mr. Yeldell assumed the role of tourism manager for the City [Doc. 18].

Also in 2004, Mr. Perella created a data-entry position, which was a new position within the Tourism Department [Doc. 17-2 at 34]. Plaintiff assumed the responsibilities of the data-entry position along with her responsibilities as an Aquarium Welcome Center hostess [Doc. 17-2 at 34; Doc. 18]. At all times during her employment, plaintiff's desk was located on the second floor of the Aquarium Welcome Center [Doc. 17-1 at 34; Doc. 18]. There was no elevator in the welcome center, and the only access to the second floor was via a handicap ramp or stairs [Doc. 17-1 at 34].

In 2008, plaintiff was diagnosed with avascular necrosis, which limited her ability to walk and stand without assistance for extended periods of time [Doc. 1 ¶ 8; Doc. 17-1 at 7, 18–19]. Because of her medical condition, plaintiff took unpaid leave under the Family Medical Leave Act to allow her to apply for benefits under her long-term disability insurance [Doc. 17-1 at 66–67]. Plaintiff filed for long-term disability benefits insurance on April 7, 2009 [Doc. 15-3]. On her application, she represented that she could not perform many of the key duties of her job as an Aquarium Welcome Center hostess [*Id.*]. She signed the application, affirming that her employee statement was true and complete to the best of her

2

knowledge and belief [*Id*.]. Her application was granted on July 2, 2009 [Doc. 15-4]. In addition, plaintiff was awarded social security disability benefits because of her disability [Doc. 15-11 at 6–7].

Plaintiff was issued a handicap parking permit [Doc. 17-1 at 19], and she requested that she be allowed to park in a handicap space [Doc. 1 ¶ 9]. While Kara Dense ("Ms. Dense"), plaintiff's supervisor, and Jim Davis ("Mr. Davis") told plaintiff not to park in a handicap space, Mr. Perella later gave plaintiff permission to park in any handicap space [Doc. 17-1 at 20–21]. Plaintiff did not park in a handicap space, however, because she was afraid of losing her job [*Id*. at 22–23].

Plaintiff had difficulty ambulating to her desk at the Aquarium Welcome Center [*Id*. at 35], and she requested that she be moved to an office on the ground floor or become Mr. Perella's Executive Secretary [*Id*. at 22–23, 29–31]. In addition, plaintiff asked that the City create a new job for her [Doc. 15-11 at 26]. There was no welcome center on the ground floor, however, as that space was occupied by the transportation and garage departments for the City [Doc. 16; Doc. 15-11 at 25]. It also is undisputed that plaintiff had no experience in those areas [Doc. 15-11 at 25]. Upon inquiry about becoming Mr. Perella's Executive Secretary, which would have allowed plaintiff to work in a one-story home, Mr. Perella laughed [Doc. 17-1 at 30–31]. Instead of hiring plaintiff, Mr. Perella hired Olivia Repert, a 20-year old female [*Id*. at 32]. Although plaintiff believed the position was open "shortly before [she] left," Mr. Perella stated the position did not become available until after plaintiff was no longer employed with the City [*Id*. at 30; Doc. 15-10 at 61–62]. Also, plaintiff

admitted to not having any experience as a secretary, that she typed only forty-two words per minute, and that she had no experience with dictation or transcription [Doc. 15-11 at 33, 63–64].

The City has a transfer policy that generally requires that persons interested in a position with the City go through the Human Resource Department and fill out applications for any available positions [Doc. 15-10 at 61–61; Doc. 15-5].  Plaintiff did not inquire with the head of the transportation or garage departments about whether either department had any openings, and she was unaware of any openings in those departments at the relevant time [Doc. 15-11 at 25–26, 28].  Nor did plaintiff request that she be assigned to any particular job on the ground floor [*Id.*].  Plaintiff states she was told by her supervisor, Mr. Dense, not to speak to the Human Resource Department or cause any trouble, but to speak only to Mr. Perella [Doc. 17-1 at 39].  Mr. Perella also told plaintiff to speak to him instead of the Human Resource Department [*Id.*].

The City had three welcome centers during plaintiff's employment: the Aquarium Welcome Center, a Parkway welcome center, and a Gatlinburg welcome center [Doc. 17-2 at 29–31].  There were approximately five to seven full-time employees that served as hosts and hostesses at the three welcome centers [Doc. 18].  The Aquarium Welcome Center, however, was the only welcome center located on a second floor [*Id.*].  The City also had a one-story administrative office located on Reagan Drive in Gatlinburg [Doc. 17-4 at 55; Doc. 18].

4

Upon returning from surgery in March 2009, Mr. Yeldell observed plaintiff coming upon the stairs on crutches and said, "Oh, there's the crip" [Doc. 17-1 at 43]. Mr. Yedell had called plaintiff a "cripple" on at least one other occasion [*Id*.]. Plaintiff told Mr. Yedell she did not appreciate such comments, and he responded by telling her to get out of his office [*Id*.]. Plaintiff also alleges that she was called "old" [Doc. 1 ¶ 32] and that Mr. Yedell commented that she did not need to learn a new computer program because she was "too dumb" [Doc. 17-1 at 40–42].

Plaintiff complained to the City's former Human Resource Manager, Janet Curry, and the current Human Resources Manager, Lori Tierney, about Mr. Yeldell [*Id*. at 38, 48; Doc. 17-6]. Plaintiff also complained to Ms. Dense about Mr. Yeldell [*Id*. at 48]. The City has a policy that prohibits harassment, including harassment based upon age or disability [Doc. 15-5]. The policy provides that "[a]ny employee who believes [she] has been the victim of harassment . . . is obligated to report the alleged act(s) immediately[.]" The policy provides for an investigation of those claims by a designated City official and disciplinary action where appropriate. When an official complaint was made on April 3, 2009, about a co-worker calling plaintiff a "cripple," an investigation was conducted and concluded within four days [Doc. 15-6]. The co-worker was disciplined with six months of disciplinary probation, a demotion to remove all supervisory responsibilities, and a multi-day suspension without pay [*Id*.]. Plaintiff, however, was never notified that Mr. Yeldell received any discipline as a result of her complaints [Doc. 17-1 at 50].

5

During plaintiff's employ, the City had a policy that allowed plaintiff to take a lunch break, and plaintiff clocked out for lunch [Doc. 15-7; Doc. 15-10 at 74]. The City provided a specific area for lunch breaks and employees were permitted to leave the premises for lunch [Doc. 15-9 at 105–106]. A "be back in 30 minutes" sign was also available to be used during lunch breaks [Doc. 15-8 at 56–57]. During such times, as in the evening hours, the Aquarium Welcome Center operated unmanned [*Id.*]. Plaintiff, however, states she could not take a lunch break because people would follow her to the lunch room and someone once stole her purse, so she sat at her desk because she could not lock the doors and no one would cover the desk [Doc. 17-1 at 51–52]. Plaintiff also states Ms. Dense and Ms. Tierney were aware that plaintiff was working during her lunch break, but they instructed her to clock in and out [*Id.* at 52]. The head of plaintiff's department, however, never recalled witnessing plaintiff eat lunch at her desk or notify him that she was not taking a lunch break [Doc. 15-10 at 75–76]. Other City employees worked in offices behind plaintiff's desk, but plaintiff never asked them to cover for her during lunch [Doc. 17-1 at 52].

Plaintiff commenced this action on or about January 12, 2011, asserting five causes of action: discrimination in violation of the Americans with Disability Act (the "ADA"), discrimination by refusal to accommodate in violation of the ADA, hostile work environment in violation of the ADA, age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), and violations of the Fair Labor Standards Act (the "FLSA"). Before the Court is defendant's motion for summary judgment, seeking summary judgment on all claims raised by plaintiff in the complaint [Doc. 15].

6

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).  "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250.  The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249.  Nor does the Court search the record "to

7

establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. The ADA Claims

Defendant asserts, and plaintiff does not contest, that plaintiff sets forth two claims pursuant to the ADA: refusal to accommodate and hostile work environment [*See* Doc. 1 ¶¶ 17–28].

In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must establish that: "1) [s]he is an individual with a disability; 2) [s]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) [s]he was discharged solely by reason of [her] handicap." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (footnote and citations omitted). A plaintiff may prove that she was discriminated against based upon her disability either through direct or indirect evidence. *Id.* The Sixth Circuit Court of Appeals has explained that in cases where the plaintiff presents direct evidence of disability discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed

8

reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004) (quoting *Monette*, 90

F.3d at 1186). When a plaintiff seeks to establish his or her case indirectly, however, the

burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973), applies so that the:

> plaintiff may establish a *prima facie* case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Hedrick*, 355 at 453 (citations omitted). There is no dispute that there is no direct evidence

of discrimination and the *McDonnell Douglas* approach applies here.

Defendant asserts that plaintiff cannot establish a *prima facie* case of discrimination

under the ADA because plaintiff cannot maintain she was "otherwise qualified for the

position, with or without reasonable accommodation" and she did not "suffer an adverse

employment decision" because she was not denied a reasonable accommodation, factors (2)

and (3) above. Further, defendant asserts that the evidence does not support a claim for

hostile work environment.

9

### 1. Otherwise Qualified

Defendant, relying upon *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), asserts that plaintiff is estopped from claiming that, at the time of her separation from employment, she was a qualified individual capable of performing the essential functions of her job because she represented on her long-term disability employee application that she was prevented from performing at least one of the material duties of her job as a result of her disability.

In *Cleveland*, the Court addressed the "apparent contradiction [that] arises when a plaintiff brings an ADA claim, asserting that he is *not* too disabled to work, but also applies for [Social Security Disability Insurance ("SSDI")] benefits, stating that he *is* too disabled to work." *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 587, 597 (W.D. Tenn. 2009). The Court found "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case-at least if she does not offer a sufficient explanation." *Cleveland*, 526 U.S. at 806. Thus, an ADA plaintiff "cannot simply ignore" the contradiction, but "must proffer a sufficient explanation" in order to survive summary judgment. *Id.* The "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807.

Here, plaintiff applied for long-term disability benefits on April 7, 2009, while she was on unpaid leave pursuant to the Family Medical Leave Act. On the application, which

plaintiff signed, affirming such was true and complete to the best of her knowledge and belief, plaintiff represented that she could not perform many of the key duties of her job as an Aquarium Welcome Center hostess, including getting to the job, getting information for tourists, stocking brochures, and opening doors. Plaintiff was awarded long-term disability benefits as of July 2, 2009. Plaintiff also was awarded social security disability benefits.

The Court finds plaintiff's representations on her application for disability benefits negate an essential element of her ADA case, that is, that she was otherwise qualified for the position, with or without reasonable accommodation. Plaintiff, however, offers an explanation regarding the contradiction. She states she testified that, had she been given a reasonable accommodation, namely relocated or given a different position, she could have continued performing the essential functions of her job. Accordingly, the Court finds defendant's argument for summary judgment on this ground without merit.

### 2. Adverse Employment Decision and Reasonable Accommodation

Plaintiff asserts that she was subject to an adverse employment action because she was constructively discharged after defendant failed to provide her with a reasonable accommodation. The Sixth Circuit has stated:

> In order to establish a prima facie [case] of disability discrimination under the ADA for failure to accommodate, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

11

*Myers v. Cuyahoga Cnty.*, 182 F. App'x 510, 515 (6th Cir. 2006) (citation omitted). "An ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (citations omitted). A "reasonable accommodation" may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Plaintiff maintains that she requested three accommodations: (1) the use of a handicap parking space, (2) being relocated to a ground-level office at the Aquarium Welcome Center, and (3) a change in her job to become Mr. Perella's Executive Secretary. Specifically, she asserts that she asked Mr. Perella to "either move [her] or change [her] job" and for "any position that he had that would come available or make [her] one" [Doc. 17-1 at 20, 36].[1]

Regarding plaintiff's request to use a handicap parking space, plaintiff herself stated that, although others may have told plaintiff not to park in a handicap parking space, Mr.

_____

[1]In her response brief, plaintiff also seems to assert that she asked to be moved to another welcome center location; however, her deposition testimony states she inquired only about being moved to an office on the ground floor of the Aquarium Welcome Center where the transportation and garage departments are located and about becoming Mr. Perella's Executive Secretary [Doc. 17-1 at 36].

Perella later provided plaintiff with permission to use a handicap parking space. And there is no evidence that use of a handicap parking space would have even allowed plaintiff to have better access to her job as an Aquarium Welcome Center hostess on the second floor because that floor was accessible only by a staircase or a handicap ramp, and plaintiff elected not to use the handicap ramp.

In *Burns v. Coca Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir. 2000), the Sixth Circuit addressed an employer's duty to reassign a disabled employee:

> Although this court has not had occasion to define the extent of an employer's obligation to reassign a qualified individual with a disability, the Seventh Circuit has held "that the ADA places a duty on the employer to 'ascertain whether he has some job that the employee might be able to fill.'" *Dalton* [*v. Subaru–Isuzu Automotive, Inc.,*] 141 F.3d [667,] 677 [(7th Cir. 1998)] (quoting *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 487 (7th Cir. 1997)). As the Seventh Circuit observed in *Dalton*:

> > The employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites, and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of any of those alternative positions, with or without reasonable accommodations. The employer's duty to accommodate requires it to consider transferring the employee to any of these other jobs, including those that would represent a demotion.

> *Id.* at 678 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

The Court went on to state:

> We agree with the Seventh Circuit that an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified.

13

> We do not, however, hold that the employer must reassign the disabled employee to a position for which he is not otherwise qualified, or that the employer must waive legitimate, non-discriminatory employment policies or displace other employees' rights to be considered in order to accommodate the disabled individual.

*Id.*

Defendant argues that it has a non-discriminatory transfer policy that generally requires persons interested in a position with the City to go through the Human Resource Department and fill out applications for any available positions, but that plaintiff admits she never did such, which precludes her from recovering under the ADA. The Sixth Circuit has stated that a plaintiff's "failure to request a transfer to a new position for which he was otherwise qualified precludes him from recovering for discrimination under the ADA." *Burns*, 222 F.3d at 258. Plaintiff, however, testified that she was directed not to go through the Human Resource Department, but to speak to Mr. Perella directly. Because plaintiff testified that she asked Mr. Perella to "either move [her] or change [her] job" and for "any position that he had that would come available or make [her] one" [Doc. 17-1 at 20, 36], the Court will consider whether defendant satisfied its burden under *Burns* despite plaintiff not formally applying for an available position via the Human Resource Department.

With respect to plaintiff's request to be moved to the ground floor of the Aquarium Welcome Center, the Court notes that it is undisputed that there is no welcome center on the ground floor, but that the departments of transportation and garage are located there. Defendant maintains that plaintiff admitted she had no experience in either department, that plaintiff never requested to be assigned to any particular job there, and that plaintiff was not

14

aware of any job openings in those departments. Plaintiff asserts she could have done a number of jobs on the ground floor, including posting and answering phones. Plaintiff also asserts Mr. Perella testified that his response to plaintiff's request to be relocated to the ground floor was that "there wasn't a welcome center down there," which presents an issue of fact as to whether he even considered transferring plaintiff to a position on the ground floor. Given that plaintiff admitted that there was no specific job that she requested she be assigned to and that she was unaware of any job openings on the ground floor, however, the Court finds, under *Burns*, defendant did not fail to make a reasonable accommodation in this regard.

With respect to plaintiff's request that a new job be created for her, plaintiff asserts that Mr. Perella previously created the job of data-entry clerk for plaintiff. Employers, however, are not required to create a new job to make an accommodation. *Burns*, 222 F.3d at 257. Accordingly, despite that the position of data-entry clerk was created for plaintiff, the Court finds defendant likewise did not fail to make a reasonable accommodation in this regard.

Finally, with respect to plaintiff's request that she be hired as Mr. Perella's Executive Secretary, the parties debate about whether the position became available prior to plaintiff leaving her employment with defendant. Plaintiff asserts Mr. Yeldell and Ms. Tierney testified that the position came available while plaintiff was still employed, but plaintiff provides no evidence to support this proposition. Indeed, evidence in the record demonstrates the contrary. Mr. Perella explained that the position did not come open until

after plaintiff left her employment with defendant. Also, the affidavit of the Interim Human Resource Director, Ashley Miller, and the City's business records show that the position did not come open until July 2009, three months after the plaintiff left her employment. Accordingly, and because plaintiff has failed to introduce any evidence that defendant knew the position of Mr. Perella's Executive Secretary would become vacant within a reasonable amount of time, the Court finds defendant did not fail to make a reasonable accommodation in this regard. *See Thompson v. E.I. DuPont deNemours and Co.*, 70 F. App'x 332, 337 (6th Cir. 2003) ("While 'an employer may be required to reassign an individual to a position that is currently unavailable but that will become vacant within a reasonable amount of time,' an employer is not required to reassign an employee to a position that is not available when the employer is conducting its review of positions or where availability is not anticipated in the near future." (quoting *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir. 2000))); *see also* 29 C.F.R. 1630.2(o).

Accordingly, for these reasons, the Court finds plaintiff has failed to establish a *prima facie* case for discrimination pursuant to the ADA. Defendant's motion for summary judgment will be granted in this respect and plaintiff's refusal to accommodate claim under the ADA will be dismissed.

### 3. Hostile Work Environment

In order to maintain a hostile work environment claim under the ADA, a plaintiff must demonstrate that:

> (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures.

*Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002) (citations omitted). A plaintiff must show conduct that is "sufficiently severe or pervasive to alter the conditions of . . . employment and [to] create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Courts look at all the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris*, 510 U.S. at 23). Conduct that is "merely offensive" will not suffice to support a hostile work environment action. *See Harris*, 510 U.S. at 21. Also, the work environment must be both subjectively and objectively offensive. *Id.* at 21–22.

Defendant asserts that plaintiff admitted in her deposition that Mr. Yeldell referred to her as a "crip" or "cripple" on two occasions. In response, plaintiff asserts that in addition to Mr. Yedell's comments, Mr. Davis and Ms. Dense told plaintiff not to park in the handicap parking space closest to the entrance of the Aquarium Welcome Center, and Mr. Davis once instructed plaintiff to deliver materials across the street despite knowledge that she had difficulty walking. While such limited and isolated comments and incidents may have been inappropriate, unprofessional, and inconsiderate, such are not sufficiently severe and

17

pervasive as to alter the conditions of plaintiff's employment and create a hostile working environment. *Compare Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002) (noting that the plaintiff, who suffered from a mental disability and was called names such as "looney toon," "wacko," "crazy," and "Rambo," was not subject to a hostile work environment), *with Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565–68 (6th Cir. 1999) (finding allegations of derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at plaintiff, offensive comments directed at women in general, denial of the plaintiff's overtime, and the exclusion of the plaintiff from certain workplace areas sufficient to have supported a hostile work environment). Moreover, it is undisputed that Mr. Perella granted plaintiff permission to park in a handicap parking space, and he did so after Mr. Davis and Ms. Dense informed plaintiff not to park there.

Accordingly, the Court finds no general issue of material fact exists as to whether plaintiff was subject to a hostile work environment. Defendant's motion for summary judgment will be granted in this respect and plaintiff's hostile work environment claim under the ADA will be dismissed.[2]

### B.      The ADEA Claims

The ADEA provides that it is unlawful for an employer "to fail to refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his

---

[2]In light of the Court's finding, the Court determines it unnecessary to address defendant's alternative argument that it is entitled to assert the affirmative defense established by *Faragher* and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a). A plaintiff "may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination." *Grubb v. YSK Corp.*, 401 F. App'x 104, 113 (6th Cir. 2010) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citation omitted)). Circumstantial evidence, on the other hand, "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (citation omitted). Regardless of whether a plaintiff proves his claim through direct or circumstantial evidence, the burden of persuasion remains on the plaintiff to demonstrate "by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, —, 129 S. Ct. 2343, 2351 (2009); *see Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010).

Claims based on circumstantial evidence are analyzed under the burden-shifting framework articulated in *McDonnell Douglas*. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410–11 (6th Cir. 2008). Under the *McDonnell Douglas* framework, the burden is on the plaintiff to first establish a *prima facie* case under the relevant statute. *Id.*; 411 U.S. at 802. A plaintiff establishes a *prima facie* case by showing, *inter alia*, that (1) the plaintiff was a member of a protected class; (2) the plaintiff was discharged or subject to an

19

adverse employment action; (3) the plaintiff was qualified for the position; and (4) the plaintiff was replaced by a person outside the protected class. *See Wexler*, 317 F.3d at 591; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The plaintiff can also satisfy the fourth prong by showing that the plaintiff was "treated differently from similarly situated employees outside the protected class." *Martin*, 548 F.3d at 410–13 (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)).

Defendant argues that plaintiff cannot satisfy the second or third prongs. The Court agrees that there is no genuine issue of material fact regarding the second prong, that is, whether plaintiff was subject to an adverse employment action. Plaintiff was separated from her employment with the City after maintaining that she could not physically perform her job as a hostess. Plaintiff asserts she was subject to an adverse employment action because she was passed over for the position as Mr. Perella's Executive Secretary, and refusal to transfer or hire can be an adverse employment action; however, as discussed earlier in this memorandum opinion, that position was not available at the time plaintiff separated from her employment with the City. Accordingly, because plaintiff has failed to establish a *prima facie* case for discrimination pursuant to the ADEA, the Court will grant defendant's motion in this respect and dismiss the claim.

As to plaintiff's hostile work environment claim under the ADEA, the Sixth Circuit has established four elements for a *prima facie* case: (1) "[t]he employee is 40 years old or older;" (2) "[t]he employee was subjected to harassment, either through words or actions, based on age;" (3) "[t]he harassment had the effect of unreasonably interfering with the

employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and" (4) "[t]here exists some basis for liability on the part of the employer." *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). Defendant argues plaintiff cannot make out a *prima facie* case because she merely claims she was called "old," and has presented no other evidence of age discrimination. Plaintiff counters that she also has presented evidence that Mr. Yeldell commented that plaintiff did not need to learn a new computer program because she was "too dumb." While these limited and isolated comments may have been inappropriate and unprofessional, as with the comments pertaining to plaintiff's ADA hostile work environment claim, such comments are not sufficiently severe and pervasive as to alter the conditions of plaintiff's employment and create a hostile working environment. *See Crawford*, 96 F.3d at 836 (finding plaintiff failed to establish a *prima facie* case because the only two comments she could present to support her claim were comments that "women over 55 should [not] be working" and "[o]ld people should be seen and not heard"). Accordingly, the Court finds plaintiff has not established a *prima facie* case for her hostile work environment claim under the ADEA and that summary judgment in defendant's favor is appropriate.

## C.     The FLSA Claim

"The Fair Labor Standards Act compels employers to pay the federal minimum wage and provide overtime pay to those employees covered by the Act's overtime provisions." *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 985 (W.D. Tenn. 2011) (citation omitted). Pursuant to 29 U.S.C. § 207(a)(1), an employer is required to compensate a covered, non-

21

exempt employee who works more than forty hours per workweek for "employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." "Work" is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (footnote omitted). "Work not requested but suffered or permitted is work time" for which the employer is liable. 29 C.F.R. § 785.11; *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) ("[A]n employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that [the employee] is continuing to work' and that work was 'suffered or permitted' by the employer." (quoting 29 C.F.R. § 785.11)).

"In an action by an employee to recover unpaid wages under the FLSA, the employee generally must prove by a preponderance of evidence that he or she performed work for which he [or she] was not properly compensated." *Monroe*, 763 F. Supp. 2d at 986 (footnote omitted) (quoting *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)). Liability is imposed, however, only where an employer possesses actual or constructive knowledge of the employee's overtime. *Id.* "[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the

22

employer's failure to pay for the overtime hours is not a violation of . . . [the FLSA]." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

Defendant asserts that it has kept quality records of the hours plaintiff worked, which evidence that plaintiff clocked out for lunch every day. Further, despite plaintiff's assertion that she worked through her lunches because she was unable to get away from tourists and because there was no one to cover her desk, defendant never asked coworkers to cover for her, even though they were working in offices just behind plaintiff's desk. In addition, defendant points out that there was a "be back in 30 minutes" sign that plaintiff could have used during her lunch breaks, allowing the welcome center to operate unmanned as it did in the evening hours. Defendant also asserts that the City had a policy of allowing workers to leave the Aquarium Welcome Center during lunch.

Plaintiff counters that, while she may have clocked out during her lunch break, she continued working at her desk, providing assistance to tourists, and she claims her employer knew about such. In particular, she points to the deposition testimony of Mr. Yeldell, who when asked whether he had ever seen plaintiff eating lunch at her desk, stated "Yes. Eating at her desk. I don't know if it was lunch or not, but, yes" [Doc. 17-2 at 105]. This testimony, however, does not demonstrate that Mr. Yeldell ever knew plaintiff was working while also clocked out for her lunch break. Plaintiff also testified that Ms. Dense and Ms. Tierney were aware that plaintiff was working during her lunch break, but there is nothing in the record before the Court to establish that they had any knowledge that plaintiff was in fact working while not clocked in. As plaintiff has put forth no other evidence—for example, that she

23

requested payment for the time spent working during lunch—that demonstrates defendant knew plaintiff was working during her permitted lunch break without being compensated, the Court cannot conclude that plaintiff has provided evidence of a genuine issue of fact in regard to her FLSA claim.

Accordingly, the Court finds summary judgment on plaintiff's FLSA claim appropriate. Defendant's motion will be granted in this respect.

**IV.    Conclusion**

For the reasons explained herein, Defendant City of Gatlinburg's Motion for Summary Judgment [Doc. 15] will be **GRANTED** and all claims brought by plaintiff will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan _____
UNITED STATES DISTRICT JUDGE

24